UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEORGIANA W.,[1]

                        Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

<u>DECISION & ORDER</u>

20-CV-6051MWP


## <u>PRELIMINARY STATEMENT</u>

Plaintiff Georgiana W. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 13).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## **DISCUSSION**

### I.    **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)  whether the claimant is currently engaged in substantial gainful activity;

(2)  if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)  if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

<blockquote>
(4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.
</blockquote>

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    <u>Procedural History</u>

On October 26, 2013, plaintiff filed her claim for DIB and SSI, alleging disability since December 27, 2010.  (Tr. 72, 82, 92-93).[2]  Her application was denied on March 28, 2014. (Tr. 94-99).  On appeal, this Court entered a stipulation for remand agreed to by plaintiff and the Commissioner on October 18, 2018 (Tr. 610-12), and the Appeals Council entered a remand order with specific instructions to the ALJ on February 15, 2019 (Tr. 604-608).  Plaintiff's current appeal relates to the Commissioner's subsequent denial of her DIB and SSI application on remand on September 27, 2019.  (Tr. 514-33).

## III.    <u>The ALJ's Decision</u>

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in

---

[2]  The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

substantial gainful activity since December 27, 2010, the alleged onset date. (Tr. 520). At step

two, the ALJ concluded that plaintiff had the following severe impairments: generalized anxiety

disorder; panic disorder without agoraphobia; post-traumatic stress disorder ("PTSD"),

unspecified depressive disorder; obsessive compulsive disorder ("OCD"); and, chronic low back

pain. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or

combination of impairments) that met or medically equaled one of the listed impairments in the

Listings. (Tr. 521).

The ALJ concluded that plaintiff retained the RFC to perform medium work,

except that she was limited to only occasional climbing, balancing, stooping, kneeling,

crouching, and crawling. (Tr. 522). The ALJ also limited plaintiff to simple, routine, repetitive

tasks in a low-stress environment (defined as work requiring only occasional decision-making,

occasional changes in a work setting, and occasional judgment) and to only occasional

interaction with coworkers, supervisors and the public. (*Id.*). At step four, the ALJ found that

plaintiff was unable to perform her past work. (Tr. 531). At step five, the ALJ determined that

other jobs existed in significant numbers in the national economy that, based on her age,

education, work experience, and RFC, plaintiff could perform, such as hand packager, laundry

laborer, and routing clerk. (Tr. 532). Accordingly, the ALJ found that plaintiff was not disabled.

(Tr. 533).

## IV.    **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she was not disabled is not

supported by substantial evidence and is the product of legal error. (Docket ## 10, 12). First,

plaintiff maintains that the ALJ erroneously weighed the medical opinions of record relating to

her mental health impairments, specifically, the opinions of her former treating psychiatrist

Thundathil Abraham ("Dr. Abraham"), MD, her current treating psychiatrist, Patrick Gibbons ("Dr. Gibbons"), MD, and her primary care physician, Azfar Ahmed ("Dr. Ahmed"), MD. (Docket # 10-1 at 17-27). Second, plaintiff argues that the ALJ rejected the only opinion evidence relating to her physical impairment – assessed by Jennifer Coleman ("Coleman"), PA-C – and thereby created an evidentiary gap in the record resulting in a physical RFC determination unsupported by substantial evidence. (*Id.* at 28-30).

## V.  Analysis

### A.  The ALJ Properly Weighed the Opinion Evidence and Reached a Mental RFC Determination Supported by Substantial Evidence

I turn first to plaintiff's contention that the ALJ erroneously weighed the medical opinion evidence relating to her mental health impairments. (*Id.* at 17-27). In essence, plaintiff maintains that the ALJ did not provide sufficiently "good reasons" for affording less than controlling weight to the medical opinions of her treating providers – Drs. Abraham, Gibbons, and Ahmed – in contravention of the treating physician rule. (*Id.* at 20-25). The error was compounded, in plaintiff's view, by the ALJ's improper reliance on opinions from non-treating sources – specifically, state agency non-examining psychologists T. Harding ("Dr. Harding"), PhD, and Mary Buban ("Dr. Buban"), PsyD, and consultative psychologist Christine Ransom ("Dr. Ransom"), PhD. (*Id.* at 25-27). Plaintiff contends that remand is warranted for proper evaluation of this opinion evidence. I disagree.

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R.

§ 404.1527(d)[3]).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history."  *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must explicitly consider the "*Burgess* factors":

(1)     the frequency of examination and length, nature, and extent of the treatment relationship,

(2)     the amount of medical evidence supporting the opinion,

(3)     the consistency of the opinion with the record as a whole,

(4)     whether the opinion is from a specialist, and

(5)     whatever other factors tend to support or contradict the opinion.

---

[3] This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'").  "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'"  *Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted).  "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable."  *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Here, as the ALJ recognized, the record contains medical opinions from three of plaintiff's treating medical providers.  (Tr. 528-30).  First, Dr. Abraham, a staff psychiatrist at Wayne Behavioral Health Network ("Wayne Behavioral"), completed a "Mental Impairment Questionnaire" on April 7, 2014, in which he noted plaintiff's diagnoses of anxiety disorder with

panic attacks, PTSD, and depressive disorder. (Tr. 336-41). Dr. Abraham indicated that he first

treated plaintiff on November 11, 2012, had most recently examined her on April 7, 2014, and

had seen plaintiff once every two months or as needed. (Tr. 337). Plaintiff's symptoms included

generalized or persistent anxiety and recurrent panic attacks that worsened in stressful

environments, such as in work-like settings. (Tr 338-39). As a result of plaintiff's mental

impairments and associated symptoms, Dr. Abraham opined that plaintiff would experience

"moderate" limitations interacting appropriately with the public, asking simple questions or

requesting assistance, and getting along with coworkers or peers without distracting them;

otherwise, plaintiff had "mild" or "no[]" mental limitations. (Tr. 340).[4] Dr. Abraham indicated

that he did not know how often plaintiff would be absent from work because of her mental health

impairments. (Tr. 341). He also noted that plaintiff's symptoms had begun on December 27,

2010. (*Id.*).[5]

       Dr. Abraham also completed an undated "narrative summary" regarding

plaintiff's mental health impairments. (Tr. 446). In that summary, Dr. Abraham stated that he

had last seen plaintiff on January 5, 2015 and that plaintiff carried diagnoses of generalized

anxiety disorder, panic disorder, and PTSD secondary to childhood sexual abuse. (*Id.*). Plaintiff

treated with Dr. Abraham every two or three months for "medication management and support,"

and she also received "regular biweekly therapy sessions from a therapist at the clinic focusing

---

[4] The form completed by Dr. Abraham defined "mild" limitations as "[s]ymptoms [that] *rarely interfere* with ability" and "moderate" limitations as "[s]ymptoms [that] *occasionally interfere* with ability (*[o]ccasional* – up to 1/3 of an 8-h[our] workday)." (Tr. 340 (emphasis in original)).

[5] Dr. Abraham submitted a letter dated June 15, 2016 in which he explained that his opinion that plaintiff's symptoms and limitations had begun on December 27, 2010 was "essentially based on [plaintiff's] own report" that she "receiv[ed] treatment for her mental health problems from her then [primary care physician] for 2-3 y[ears] prior" to treatment at Wayne Behavioral. (Tr. 488). Dr. Abraham "kn[ew] [plaintiff] and treated her for the last four years" and "ha[d] no concern about the veracity of her statement," and he therefore "felt comfortable in stating that the functional limitations began around the time [of December 27, 2010]." (*Id.*).

on cognitive behavior therapy to manage her anxiety, panic attacks and PTSD symptoms." (*Id.*).

Dr. Abraham noted that plaintiff had made "some progress" in treatment with her anxiety and

panic attacks to the point that her panic attacks diminished to "once or twice a week," although

they were "still unpredictable and [occurred] out of the blue." (*Id.*). He opined that plaintiff

"remain[ed] disabled and [was] unable to work in a full[-]time competitive environment and [a]

stressful environment [was] a sure recipe for exacerbation of her symptoms." (*Id.*).

        The ALJ afforded Dr. Abraham's opinion "partial weight." (Tr. 528-29). In

doing so, the ALJ acknowledged that Dr. Abraham "has professional expertise and had a treating

relationship with [plaintiff]" and credited the opinion "to the extent that [Dr. Abraham's]

findings [were] supported by the objective medical evidence of record." (Tr. 529). The ALJ,

however, "reject[ed]" Dr. Abraham's "conclusory statement regarding [plaintiff's] ability to

work" as that issue was reserved for the Commissioner, as well as "the portion of Dr. Abraham's

assessment, which [was] based on [plaintiff's] subjective report rather than his own analysis."

(*Id.*). The ALJ nonetheless recognized that the medical evidence, which he detailed in his

decision, established that plaintiff "was receiving outpatient counseling services within weeks of

her alleged onset date" and observed that Dr. Abraham's opinion supported a finding that

plaintiff was "capable of simple work in a low contact environment." (*Id.*).

        Plaintiff's primary care physician, Dr. Ahmed, completed a "Mental Impairment

Questionnaire" on April 14, 2016, which was cosigned by Rena Reed ("Reed"), NP.

(Tr. 453-57). Dr. Ahmed indicated that plaintiff had diagnoses of panic disorder and PTSD,

which caused persistent or generalized anxiety, flat affect, difficulty thinking or concentrating,

easy distractibility, recurrent panic attacks, and trouble sleeping. (Tr. 453-54). In Dr. Ahmed's

view, plaintiff's panic attacks were her most frequent and/or severe impairment, and he opined

that plaintiff "would have to leave work when [experiencing] panic attacks." (Tr. 455). Dr. Ahmed estimated that plaintiff had "moderate" limitations in her abilities to carry out simple, one-to-two step instructions; perform activities within a schedule and consistently be punctual; sustain an ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; be aware of hazards and take appropriate precautions; set realistic goals; and, make plans independently. (Tr. 456). He also opined that plaintiff had "moderate-to-marked" limitations in her abilities to remember locations and work-like procedures; understand and remember one-to-two step instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; get along with coworkers or peers without distracting them; respond appropriately to workplace changes; and, travel to unfamiliar places or use public transportation. (*Id.*).[6] Further, plaintiff would be absent from work for an average of two to three times per month because of her impairments or associated treatment. (Tr. 457).

Even though the ALJ purported to assign a "little weight" to Dr. Ahmed's opinion because he "ha[d] a treating relationship with [plaintiff]," the ALJ nonetheless "reject[ed] [Dr. Ahmed's] findings." (Tr. 529). The ALJ noted that Dr. Ahmed's assessed "mental limitations [were] outside the scope of [his] expertise[, and] his assessment [was] inconsistent with [plaintiff's] psychiatrist's assessment and inconsistent with the objective medical evidence"

---

[6] The questionnaire completed by Dr. Ahmed defined "moderate" limitations as "[s]ymptoms [that] *occasionally* interfere with ability (*[o]ccasional* – up to 1/3 of an 8-h[our] workday)" and "moderate-to-marked" limitations as "[s]ymptoms [that] *frequently* interfere with ability (*[f]requent* – 1/3 - 2/3 of an 8-h[our] workday)." (Tr. 450 (emphasis in original)).

11

recited by the ALJ earlier in his decision. (*Id.*). Moreover, the ALJ stated that because plaintiff's "psychiatrist was unable to determine if [she] would be absent from work, [he] d[id] not accept that her primary care provider [would be] able to do so." (*Id.*).

Finally, the record contains a "Treating Medical Source Statement (Mental)" completed by Dr. Gibbons, plaintiff's current psychiatrist at Wayne Behavioral, on August 1, 2019. (Tr. 1025-30). Dr. Gibbons first treated plaintiff on August 29, 2017, and he saw plaintiff every one to three months. (Tr. 1025). Plaintiff was diagnosed with OCD, panic disorder, unspecified depressive disorder, and chronic PTSD, and she reported that her anxiety made certain activities difficult and caused her to avoid children's events and social gatherings. (*Id.*). Dr. Gibbons noted that plaintiff's response to medication and therapy was "fair" and also that, although plaintiff experienced symptoms of OCD and anxiety, she "[r]arely has full panic attacks now." (*Id.*). Plaintiff's symptoms included appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; persistent disturbance of mood or affect; apprehensive expectation; recurrent obsessions or compulsions, which are a source of marked distress; emotional withdrawal or isolation; sleep disturbance; and, recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. (Tr. 1026).

In Dr. Gibbons's view, plaintiff could not engage in full-time competitive employment on a sustained basis, which was based on "[plaintiff's] state[ment] [that her] anxiety prevent[ed] her from keeping up with [the] pace and consistency req[uired] to stay working." (Tr. 1025). Dr. Gibbons opined that plaintiff was not limited at all in her ability to remember

and understand simple work-like procedures or very short and simple instructions, but that for a period of less than 10% of an eight-hour workday she could not maintain attention for two hour segments, interact appropriately with the general public, respond appropriately to changes in a routine work setting, or deal with normal work stress; he also opined that for a period of between 11% to 20% of an eight-hour workday she could not maintain regular attendance and be punctual within customary, usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, or perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 1027-28).  Dr. Gibbons stated that plaintiff "[w]ould likely (especially at first in [a] new environment) have anxiety that is overwhelming and requires interruption/breaks from work" and that "[t]hese symptoms would likely fluctuate over time."  (Tr. 1028).  Later in his opinion, Dr. Gibbons opined that plaintiff was "moderate[ly]" or "fairly" impaired in her abilities to interact with others and to concentrate, persist, or maintain pace, and "mild[ly]" or "slightly" impaired in her ability to adapt or manage herself.  (Tr. 1030).  Moreover, Dr. Gibbons stated that it would be "[d]ifficult to ga[u]ge" how often plaintiff would be off-task during a normal workday and/or workweek because of her impairments, and added "[m]aybe 20%."  (Tr. 1028).  He also indicated that plaintiff would be absent from work for more than four days per month, as "[a]nxiety can lead to avoidant behavior like calling in or leaving early" and "[p]anic can be debilitating during attacks for brief period." (Tr. 1029).

The ALJ assigned "partial weight" to Dr. Gibbons's opinion "to the extent that [Dr. Gibbons's] findings [were] supported by the objective medical evidence of record and [plaintiff's] activity level," while recognizing that Dr. Gibbons "has professional expertise and had a treating relationship with [plaintiff]."  (Tr. 530).  The ALJ, however, "reject[ed] Dr.

Gibbons's conclusory statement regarding [plaintiff's] ability to work" as an issue reserved for the Commissioner, as well as the portions "based on [plaintiff's] subjective report rather than his own analysis and . . . which he has estimated." (*Id.*). The ALJ also found that Dr. Gibbons's "extreme limitations [were] unsupported by [plaintiff's] activity level," noting that the record indicated that plaintiff could "provide childcare, including taking her children to and from school[,] volunteer at her children's school for day long activities[,] and care for elderly relatives and neighbors," and concluded that Dr. Gibbons's opinion supported the finding that plaintiff was "capable of simple work in a low contact environment." (*Id.*).

Plaintiff argues that the ALJ erred in "rejecting all of the treating source opinions in the record." (Docket # 10-1 at 17). Specifically, plaintiff contends that the ALJ erroneously (1) found that the treating opinions were inconsistent with the medical record; (2) rejected Dr. Ahmed's opinion regarding how frequently plaintiff would be absent from work; (3) discounted the portions of Dr. Gibbons's opinion that were based on plaintiff's subjective complaints; and, (4) placed too much reliance on plaintiff's ability to engage in certain activities of daily living. (*See id.* at 21-25).

Before addressing these arguments, I note that plaintiff's more general proposition that the ALJ "rejected" all the treating opinions is not accurate. Indeed, although there is no dispute that the ALJ rejected the opinion of Dr. Ahmed (*see* Tr. 531 (ALJ indicating that the RFC determination was supported by each opinion in the record except Dr. Ahmed's)), simply because the ALJ assigned "partial weight" to the opinions of Drs. Abraham and Gibbons does not mean that he "rejected" those opinions, particularly where, as here, the ALJ's RFC determination incorporates limitations contained in those opinions. *See Mathews v. Comm'r of Soc. Sec.*, 2020 WL 4352620, *8 n.10 (W.D.N.Y. 2020) ("[i]rrespective of the terminology used

by the ALJ, whether it be 'great weight,' 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence").

In fact, the mental portion of the RFC assessment is entirely consistent with the mental functional limitations opined by Drs. Abraham and Gibbons, setting aside their conclusory opinions that plaintiff was unable to engage in full-time competitive employment. Dr. Abraham noted that plaintiff had only a few "moderate" limitations in social interactions and that her mental health symptoms worsened in stressful environments (Tr. 339-40), while Dr. Gibbons ultimately found that plaintiff was "moderate[ly]" impaired in her abilities to interact with others and to concentrate, persist, or maintain pace and "mild[ly]" impaired in her ability to adapt or manage herself (Tr. 1030). The ALJ specifically accounted for plaintiff's moderate and stress-based limitations by limiting her to "simple, routine, repetitive tasks in a low stress environment" and to only "occasional interaction with coworkers, supervisors, and the public." (Tr. 522). *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 2021 WL 243099, *8 (W.D.N.Y. 2021) ("[g]iven this evidence, the limitations contained in the RFC [occasional interaction with supervisors, coworkers and the general public, and low stress work] adequately account for [p]laintiff's limitations for managing stress, particularly because the record supports that [p]laintiff's stress and anxiety stemmed, in large part, from interacting with others[;] . . . [a]ccordingly, the [c]ourt finds that the ALJ adequately considered and accounted for [p]laintiff's stress-based limitations"); *Reilly v. Colvin*, 2015 WL 6674955, *3 (W.D.N.Y. 2015) ("generally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning[;] . . . [t]he [c]ourt finds that the ALJ's

RFC finding, which stated that plaintiff should avoid 'constant contact' with other individuals, adequately reflected the moderate limitations in social functioning found by [consultative examiners][;] [e]ven if the ALJ had rephrased this limitation and found that plaintiff should have only 'limited' or 'occasional' contact with these individuals, it would not have affected the ultimate disability determination"). Contrary to plaintiff's view, the ALJ did not "reject" the functional limitations opined by Drs. Abraham and Gibbons.

   Turning now to plaintiff's specific arguments challenging the ALJ's reasoning, I find that each contention is without merit and that the ALJ's consideration of the treating opinions was consistent with the treating physician rule. Specifically, the ALJ correctly found that the medical evidence was inconsistent with the most restrictive portions of the opinion evidence. (*See* Docket # 10-1 at 21-22). In discounting Dr. Ahmed's and Dr. Gibbons's opinions on this basis, the ALJ relied on his overview of plaintiff's treatment notes in the RFC portion of his decision, which analyzed records demonstrating that plaintiff's anxiety and panic attacks generally stabilized and improved with treatment from 2011 through 2019. (*See generally* Tr. 526-27). For example, the ALJ observed that "[o]n July 16, 2014, [plaintiff] informed [providers at Wayne Behavioral] that overall, she remained stable [and that] [s]he had some periods of increased anxiety but was not having panic attacks." (Tr. 526 (citing Tr. 440)). In addition, "[b]y October 7, 2015, [plaintiff] reported only transient anxiety [and that] [s]he was working on tapering off her medication" (*id.* (citing Tr. 458)), and in February and March 2016, plaintiff "reported only occasional panic attacks and anxiety" (*id.* (citing Tr. 468)). At the end of May 2017, plaintiff's mental status examination was normal, she was compliant with medication, her mood was "stable," her depression "adequately controlled," and her anxiety and panic attacks were "stable." (Tr. 871 (referenced at Tr. 526)). Plaintiff's symptoms remained "generally

stable" in September 2018, as plaintiff was "still having some intrusive thoughts," but she reported that she "ha[d] not experienced depressive symptoms and her energy/motivation remain[ed] good," and providers noted that plaintiff's anxiety was "nearing remission." (Tr. 964-65 (referenced at Tr. 527)).  By April 2019, Dr. Gibbons indicated that although plaintiff's mental health symptoms were "distressing," they were "mild-moderate and not interfering with [her] responsibilities" (Tr. 1003 (referenced at Tr. 527)), and by May and June 2019, providers noted that plaintiff was doing "well overall" (Tr. 993, 995 (referenced at Tr. 527)).  To be sure, as the ALJ acknowledged, plaintiff was "positive for psychiatric symptoms" in some of her examinations at Wayne Behavioral; at the same time, however, she exhibited "relatively benign" symptoms at other appointments.  (Tr. 527 (citing 31 treatment notes from Wayne Behavioral, spanning from February 2011 through June 2019)).

      In addition, and contrary to plaintiff's suggestion, the opinions of Drs. Abraham, Ahmed, and Gibbons were not entirely consistent with each other.  (*See* Docket # 10-1 at 22). For instance, whereas Dr. Ahmed opined that plaintiff had "moderate-to-marked" limitations with understanding and memory in a work environment, both Dr. Abraham and Dr. Gibbons opined that plaintiff had no limitations in that category of functioning.  (*Compare* Tr. 450, *with* Tr. 340, 1027, 1030).  Similarly, whereas Dr. Ahmed opined that plaintiff had several "moderate-to-marked" limitations in her ability to adapt or manage herself in a work setting, Drs. Abraham and Gibbons opined that plaintiff had no more than mild limitations in that category. (*Compare* Tr. 450, *with* Tr. 340, 1028, 1030).  Furthermore, none of these treating providers assessed in the same manner plaintiff's ability to concentrate and persist or interact socially (*see* Tr. 340, 450, 1027-28, 1030 (ranging from no limitations to moderate-to-marked limitations)), or the frequency with which plaintiff would likely be absent from work (*see* Tr. 341 (Dr. Abraham

unable to determine if plaintiff would be absent from work); Tr. 451 (Dr. Ahmed opining two to three times per month); Tr. 1029 (Dr. Gibbons opining more than four days per month)).

The manner in which these treating opinions were supported by and consistent with the overall record, as well as with each other, were proper factors for the ALJ to consider in weighing the opinions, and the ALJ was entitled to resolve conflicting evidence and assign appropriate weight to the opinion evidence in reaching the mental RFC assessment. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("[g]enuine conflicts in the medical evidence are for the Commissioner to resolve"); *Simmons v. Comm's of Soc. Sec.*, 2020 WL 4597316, *4 (W.D.N.Y. 2020) ("[i]t [is] up to the ALJ to resolve and weigh conflicting evidence"). Given the conflicting evidence in the record concerning the extent of plaintiff's impairments and symptoms, and considering the evidence demonstrating that plaintiff's impairments and symptoms improved with treatment, I find that the ALJ properly found that the most restrictive of the opined functional limitations – ones which in some instances would be work-preclusive – were inconsistent with the record as a whole and that he properly acted within his discretion in discounting those portions of the opinion evidence on this basis.

I also disagree with plaintiff's contention that the ALJ "erred by rejecting Dr. Ahmed's opinion as to [p]laintiff's likely work absences." (Docket # 10-1 at 23). Plaintiff argues that the ALJ should have credited Dr. Ahmed's opinion that she would likely be absent from work two to three times per month because Dr. Ahmed "was a medical professional with a longitudinal treating relationship with [p]laintiff," which "equipped him [with] the ability to

assess her functioning," and that, by rejecting this assessment, the ALJ improperly relied on his lay reading of the medical evidence. (*Id.*). The ALJ did not, however, reject that finding based on his lay opinion; rather, he explicitly did so because it was at odds with Dr. Abraham's inability to render an opinion on that issue. (*See* Tr. 529 ("[g]iven that [Dr. Abraham] was unable to determine if [plaintiff] would be absent from work, [the ALJ] do[es] not accept that [Dr. Ahmed] was able to do so")). Moreover, although the ALJ recognized that Dr. Ahmed had a treating relationship with plaintiff, he also determined that, as plaintiff's primary care physician, his opined mental health limitations fell beyond his expertise (*see id.*), which was also appropriate for the ALJ to consider. *See, e.g.*, *Hochmuth v. Berryhill*, 2019 WL 2516050, *8 (W.D.N.Y. 2019) ("[t]he [c]ourt agrees that the . . . opinion regarding [p]laintiff's physical limitations is outside the scope of [treating psychologist's] expertise, and it was appropriate for the ALJ to consider this fact when assessing his opinion"); *Bailey v. Comm'r of Soc. Sec.*, 2016 WL 270453, *5 (S.D.N.Y. 2016) ("[t]he ALJ noted that the plaintiff's treating physician . . . is a pulmonologist working outside his area of expertise, rendering his medical findings less persuasive"). Thus, the ALJ did not err in rejecting that portion of Dr. Ahmed's opinion and provided good reasons for doing so.

Nor did the ALJ err by discounting those portions of Dr. Gibbons's opinion that were based on plaintiff's subjective complaints. (*See* Docket # 10-1 at 23-24). The record makes clear that Dr. Gibbons relied to some extent on plaintiff's subjective reports of her symptoms in rendering his opinion. For example, in detailing "clinical findings," Dr. Gibbons relied on what plaintiff "[r]eport[ed]," including that her "anxiety . . . cause[d] her to avoid situations like children's events, social gatherings, etc." (Tr. 1025). In addition, in opining that plaintiff could not "engage in full-time competitive employment on a sustained basis," Dr.

Gibbons relied on "[plaintiff's] state[ment] [that her] anxiety prevent[ed] her from keeping up with [the] pace and consistency req[uired] to stay working." (*Id.*). The ALJ discounted those portions of Dr. Gibbons's opinion. (*See* Tr. 530).

Although an ALJ "cannot lawfully reject a medical source's opinion *solely* because it relies on subjective complaints," he or she "may assign a treating source's opinion little weight if it based on a claimant's questionable, subjective complaints." *Tomczak v. Comm'r of Soc. Sec.*, 2019 WL 2059679, *1 (W.D.N.Y. 2019) (emphasis supplied). Indeed, "the ALJ's credibility determination may influence how he weighs the medical opinions, especially when those opinions are based on the claimant's subjective statements," and "[i]t is within the ALJ's discretion . . . to consider the claimant's subjective complaints, evaluate her credibility, and make an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Jackson v. Berryhill*, 2018 WL 3306193, *5 (W.D.N.Y. 2018) (quotations omitted). Thus, "[w]hen the ALJ finds the claimant's allegations not credible, he is entitled to discount the opinion of a medical source who relied on the claimant's subjective complaints." *Id.* (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("[b]ecause the ALJ declined to credit [plaintiff], the ALJ was entitled to discount [the treating source's] opinions insofar as they relied on [plaintiff's] subjective complaints")); *see also Tomczak v. Comm'r of Soc. Sec.*, 2019 WL 2059679 at *1 (the ALJ "can reject the opinion if he previously found the claimant's subjective complaints unsound and the medical source relied on those complaints when reaching his opinion").

Here, the ALJ evaluated and discounted plaintiff's subjective complaints concerning the "intensity, persistence and limiting effects of her symptoms." (Tr. 525). In doing so, the ALJ reasoned that the record demonstrated that plaintiff "retain[ed] a wide range of

functioning," which was inconsistent with her "alleg[ations] [of] debilitating impairments."

(*Id.*). Specifically, the ALJ noted that plaintiff reported to consultative psychologist Dr. Ransom

on March 24, 2014 that she could dress, bathe, and groom herself, cook and prepare food, clean,

do laundry, shop, manage money and drive a car, and that she mainly socialized with her family,

but did interact with others at her children's sporting events, and had a variety of hobbies and

interests at home. (*Id.* (citing Tr. 332)). Plaintiff also reported to various providers that she

could "walk in parades[,] . . . care[] for an elderly relative[,] . . . go[] on vacation[,] . . .

volunteer[] at her children's school, including full day activities[,] . . . [and] help[]

elderly/disabled people in her apartment complex." (*Id.* (citing Tr. 1019, 467, 470, 990, 476,

477, 884, 899)). Plaintiff also testified at her first disability hearing that while she attended

parent/teacher conferences with her husband, she felt that "she could probably go alone." (*Id.*

(citing Tr. 61)). In the ALJ's view, this "wide range of functioning" demonstrated that "there

[was] somewhat of a willful component to what [plaintiff] can and cannot do" and that "[t]he

ability to do these things is inconsistent with an inability to engage in substantial gainful

activity." (*Id.*).

    Although the plaintiff has not specifically contested the ALJ's credibility

assessment, I find that the ALJ was entitled to discount plaintiff's subjective complaints based on

the totality of the record evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii),

416.929(c)(3)(i)-(vii); *see also Jackson v. Berryhill*, 2018 WL 3306193 at *5 ("[i]t is the

function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to

appraise the credibility of witnesses, including the claimant") (quotations omitted). Moreover,

reliance on plaintiff's subjective complaints was not the sole basis upon which the ALJ

discounted Dr. Gibbons's opinion. (*See* Tr. 530). Accordingly, because the ALJ did not err in

discounting plaintiff's subjective complaints, it was within his discretion to discount Dr. Gibbons's opinion to the extent it relied on those complaints. *See*, *e.g.*, *Tomczak*, 2019 WL 2059679 at \*2 ("[t]he ALJ reviewed the medical source opinions in the record and concluded that [p]laintiff's subjective complaints were unreliable[;] . . . [a]fter making that finding, the ALJ assigned little weight to [doctor's] opinion because, in part, it relied on [p]laintiff's subjective complaints[;] . . . [t]hat determination was proper"); *Jackson*, 2018 WL 3306193 at \*6 ("because the ALJ found [plaintiff's] subjective complaints not credible, he was entitled to discount [the treating physician's] opinions where he relied on those complaints[;] . . . [t]hus[,] . . . the ALJ did not err when he discounted [the treating physician's] opinions on this basis").

Similarly, it was not improper for the ALJ to consider plaintiff's reported ability to engage in the activities of daily living recounted above when weighing the opinion evidence. (*See* Docket # 10-1 at 24-25). In the ALJ's view, plaintiff's ability to, among other things, "volunteer at her children's school *for day long activities*" and "care for elderly relatives and neighbors" was at odds with Dr. Gibbons's opinion that she was limited in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 530 (emphasis supplied)). The ALJ was permitted to consider this evidence as a grounds for discounting Dr. Gibbons's opinion. *See*, *e.g.*, *Fischer v. Comm'r of Soc. Sec.*, 2020 WL 4731878, \*4 (W.D.N.Y. 2020) (permissible for the ALJ to consider plaintiff's testimony that she was able to, among other things, cook, clean, do laundry, shop, and that she had cared for her elderly mother, in weighing medical opinion evidence and reaching RFC determination); *Martinez Reyes v. Comm'r of Soc. Sec.*, 2019 WL 3369255, \*6 (W.D.N.Y. 2019) (rejecting

argument that ALJ improperly relied on plaintiff's "own representation of his condition and capabilities" in rejecting plaintiff's treating physician's opinion that plaintiff could not "maintain a regular work schedule"); *Feliciano v. Berryhill*, 2017 WL 3537130, *4 (W.D.N.Y. 2017) ("[a]n ALJ is permitted to take into account conflicts between a claimant's testimony and a treating physician's opinion[;] . . . [t]he ALJ explained that plaintiff had 'nearly normal activities of daily living,' including cooking daily, cleaning her house, and doing laundry, and that she was able to live with a roommate, travel to North Carolina, help her pregnant daughter, and assist her son with his homework[;] . . . [t]hese activities are inconsistent with [treating psychiatrist's] assessment that plaintiff was capable of working for only two hours per day").

On this record, I find that the ALJ's mental RFC assessment was supported by substantial evidence. As noted above, the ALJ in fact incorporated all the mild and moderate functional limitations opined by Drs. Abraham and Gibbons. The ALJ's mental RFC determination was further supported by the opinions of examining and non-examining sources, including Drs. Harding, Ransom, and Buban. (*See* Tr. 528-31). Each of these providers opined that plaintiff had no more than moderate mental health limitations: Dr. Ransom opined on March 24, 2014 that plaintiff had "mild to moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress" (Tr. 332), which the ALJ credited by assigning it "significant weight" (Tr. 528); Dr. Harding opined on March 27, 2014 that plaintiff had moderate limitations in her ability to understand and remember detailed instructions, interact appropriately with the general public, and respond appropriately to changes in the work setting (Tr. 77-79), which the ALJ credited by assigning it "significant weight" (Tr. 528); and, Dr. Buban opined on July 21, 2016 that plaintiff was moderately limited in her ability to make judgments on complex work-related decisions, interact appropriately with the

public, and respond appropriately to usual work situations and to changes in a routine work setting (Tr. 510-11), which the ALJ considered and accorded it "partial weight" (Tr. 530-31). Contrary to plaintiff's argument (Docket # 10-1 at 25-27), the ALJ was entitled to rely on these opinions, in conjunction with the opinions of Drs. Abraham and Gibbons and the record evidence as a whole, in reaching the mental RFC determination. *See Matta v. Astrue*, 508 F. App'x at 56; *see also Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) ("it is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision[;] . . . [i]t is also generally accepted that a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence") (collecting cases); *see also Feliciano v. Berryhill*, 2017 WL 3537130 at *4 ("[t]he ALJ was permitted to consider the opinions of [the consultative examiner and non-examining state agency source], in connection with the other evidence of record, in determining that [the treating physician's] opinion was not entitled to controlling weight"); *Frawley v. Colvin*, 2014 WL 6810661, *8-10 (N.D.N.Y. 2014) (ALJ's decision to afford more weight to consultative psychologist over plaintiff's treating mental health provider supported by substantial evidence).

For all these reasons, I find that the ALJ appropriately weighed the medical opinion evidence relating to plaintiff's mental health impairments and reached an RFC assessment supported by substantial evidence. Remand is thus not warranted on this basis.

**B.**	**The ALJ's Physical RFC Determination is Supported by Substantial Evidence**

Plaintiff's second contention relates to the physical portion of the ALJ's RFC determination. (*See* Docket # 10-1 at 28-30). Plaintiff argues that by rejecting Coleman's August 8, 2019 physical RFC questionnaire, the ALJ created an evidentiary gap in the record

regarding plaintiff's low-back pain and improperly assessed the physical RFC based upon his lay interpretation of the record. (*Id.*).

Coleman's physical RFC questionnaire contained multiple severe limitations associated with plaintiff's "chronic low back pain," and she ultimately opined that plaintiff would likely be absent from work about four days per month because of her impairment and could not sustain full-time employment at *any* exertional level. (Tr. 1032-36). The ALJ "rejected" Coleman's findings for "several reasons," principally because "her extreme limitations [were] unsupported by and inconsistent with the objective medical evidence and the claimant's activity level." (Tr. 529). In reaching the RFC determination, the ALJ reviewed all records relating to plaintiff's back pain (Tr. 527-28), and "[v]iewing the evidence in the light most favorable to [plaintiff]," found that plaintiff had "postural restrictions" (Tr. 525) and limited plaintiff to medium work with only occasional climbing, balancing, stooping, kneeling, crouching and crawling (Tr. 522). In challenging this physical RFC assessment, plaintiff does not contend that the ALJ improperly dismissed Coleman's opinion; rather, she contends that by doing so, the ALJ was left without a medical opinion and thus could not properly reach a physical RFC determination. I disagree.

While an ALJ generally "is not qualified to assess a claimant's RFC on the basis of bare medical findings and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence[,] . . . it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion." *Lewis v. Colvin*, 2014 WL 6609637, *5-6 (W.D.N.Y. 2014) (citations and quotations omitted). This is particularly true where the medical evidence shows relatively minor physical impairments such that the ALJ "permissibly can render a common sense judgment about functional capacity even without a

physician's assessment." *Id.* (quotations omitted). The salient question is whether the record "contains sufficient evidence from which an ALJ can assess the [claimant's RFC]." *Id.* at *6 (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order)).

Having carefully reviewed the administrative record, I conclude that there is no gap, the ALJ properly formulated plaintiff's physical RFC based upon a comprehensive review of the record, and his determination is supported by substantial evidence in the record. Plaintiff's medical records and her own statements regarding her capabilities demonstrate that the ALJ permissibly formulated plaintiff's RFC to account for any physical impairments supported by the record.

As an initial matter, plaintiff's medical records demonstrate that she sought limited treatment for her chronic back pain. The first reference in the record to back pain is dated May 9, 2019 – approaching nine years after plaintiff's alleged onset date. (Tr. 957). At that time, plaintiff presented to Coleman as a follow-up to back pain that apparently started in April 2019. (*Id.*).[7] Coleman noted that plaintiff's back pain was a "chronic problem" that had waxed and waned since its onset, and plaintiff indicated that the pain, which she described as "moderate," was present in her lumbar spine and radiated to both feet. (*Id.*). NSAIDs provided "mild relief." (*Id.*). Coleman diagnosed plaintiff with "chronic bilateral low back pain without sciatica." (Tr. 959). On physical examination, plaintiff exhibited decreased range of motion in her lumbar back and pain. (Tr. 960). X-rays showed degenerative disc disease and "suspected herniations," and Coleman prescribed a trial of naproxen and gabapentin and encouraged plaintiff to attend physical therapy. (*Id.*).

---

[7] An April 30, 2019 treatment note from Wayne Behavioral completed by Dr. Gibbons reflects that plaintiff denied any pain in her musculoskeletal area and carried no diagnoses pertaining to her back. (Tr. 1003).

In addition to Coleman's single treatment note, the record contains treatment notes from seven physical therapy sessions at Brownstone Physical Therapy from May 21, 2019 through June 18, 2019, during which period plaintiff's condition seemingly improved. (Tr. 1009-23). At her initial examination, plaintiff's chief concern was low back pain with bilateral lower extremity radicular pain, which increased with standing or lying flat on her back or stomach. (Tr. 1021). X-rays of plaintiff's lumbar spine were negative for bony pathology, and she exhibited a normal gait pattern, but antalgic movement of her low back and transitions from supine to prone and lying to sitting. (*Id.*). Plaintiff's clinical presentation was "stable and/or uncomplicated," and she was diagnosed with lumbar derangement with bilateral radicular symptoms with range of motion, strength, and functional deficits. (Tr. 1022). Her primary functional limitations included walking and moving around. (*Id.*).

At her second appointment on May 28, 2019, plaintiff noted that she was sore because "she [had] walked alongside her daughter in a parade" the day before. (Tr. 1019). Plaintiff tolerated her exercises well, and her lumbar and hip flexibility deficits improved with "pain free stretching," but limitations with mobility remained a problem. (*Id.*). By June 3, 2019, plaintiff reported that "she [was] doing well with no new complaints," and she tolerated her exercises well, although she fatigued quickly. (Tr. 1017). She continued to improve, and, on June 6, 2019, she tolerated her exercises well and "continue[d] to tolerate progression of core and gluteal strengthening exercises without aggravation of low back pain." (Tr. 1015). Plaintiff reported doing well on June 13, 2019, with no new complaints, and on June 14, 2019, plaintiff reported that she "wasn't too sore after [her] last session," and she demonstrated "good tolerance to lumbar mobility and core strengthening." (Tr. 1011, 1013).[8] At her seventh physical therapy

---

[8] On June 11, 2019, Dr. Gibbons noted plaintiff's diagnosis for degenerative disc disease, but found that she had no pain in her musculoskeletal area. (Tr. 1006).

session on June 18, 2019, plaintiff reported that her back was "sore," but had "no specific complaints." (Tr. 1009). Plaintiff remained limited in her mobility, but her rehabilitation potential continued to be good, and she continued to tolerate her exercises well. (*Id.*).

Moreover, the record demonstrates that plaintiff did not identify any physical impairments in her initial disability applications (*see* Tr. 72, 82), her hearing testimony included little testimony regarding functional limitations associated with her back pain (*see generally* Tr. 542-80), and, as discussed elsewhere in this decision, she was able to engage in a wide range of activities despite her back pain (*see* Tr. 525 (citing Tr. 1019, 467, 470, 990, 476, 477, 884, 899)), including walking in a parade (*see* Tr. 1019). Under these circumstances, I conclude that the medical evidence and her own testimony concerning activities of daily living show that plaintiff's low back pain amounted to a relatively minor physical impairment, with a "stable and/or uncomplicated" clinical presentation (Tr. 1022); accordingly, the ALJ was permitted to formulate a reasonable, common sense RFC without a medical opinion that directly assessed plaintiff's physical ability to complete work-related functions. *See Crouse v. Colvin*, 2017 WL 975973, *6 (N.D.N.Y. 2017) (ALJ did not err by rejecting all medical opinions of record and assessing plaintiff's RFC based upon the medical record where the medical evidence demonstrated relatively minor physical impairment); *Countryman v. Colvin*, 2016 WL 4082730, *13 (W.D.N.Y. 2016) (ALJ was permitted to make common sense judgment regarding plaintiff's reaching limitation despite absence of medical opinion assessing that limitation where record showed relatively minor impairment and where "lack of . . . evidence in the record support[ed] a more restrictive limitation"); *Lay v. Colvin*, 2016 WL 3355436, *7 (W.D.N.Y. 2016) (ALJ was permitted to consider medical records and use common sense judgment to arrive "at a reasonable conclusion regarding [p]laintiff's RFC, as permitted by the [r]egulations"); *Brown v. Astrue*,

2013 WL 310292, *3 (N.D.N.Y. 2013) (ALJ permissibly rendered common sense judgment regarding plaintiff's ability to lift and carry despite absence of medical source statement opining as to weight plaintiff could manage where record demonstrated relatively minor physical impairment and ALJ's determination was supported by medical evidence of record). Remand is thus not warranted on this basis.

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
July 6, 2021